IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KRZYSZTOF WIECEK**<br><br>    v.<br><br>**CITY OF PHILADELPHIA, et al.** | **CIVIL ACTION**<br><br>**NO. 14-6925** |

**MEMORANDUM RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Baylson, J.                                                                                             February 10, 2016

### I.     Introduction

Defendants Philadelphia Parking Authority ("PPA") and PPA Parking Enforcement Officer Luz Castro ("Castro") have moved for summary judgment.  Although Plaintiff's Amended Complaint does not plead specific causes of action, its gravamen appears to be that Defendants violated 42 U.S.C. § 1983 (on theories of malicious prosecution and false imprisonment/arrest) and unspecified Pennsylvania law (likely malicious prosecution, false imprisonment/arrest and/or intentional infliction of emotional distress) based on an incident whereby Castro told police authorities that Plaintiff had assaulted her, resulting in Plaintiff's temporary detention pending arraignment and ultimate acquittal on all charges.

As explained below, Plaintiff has failed to state a § 1983 claim and thus summary judgment is warranted on all federal causes of action.  Even if the Court credits Plaintiff's assertion that Castro lied to the police, such behavior does not constitute "state action" and cannot form the basis of any § 1983 claim against her.  Even assuming that Plaintiff suffered a constitutional injury, PPA cannot be liable for it under Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978).  In light of the Court's disposition of the federal claims, it will decline to exercise supplemental jurisdiction over the pendent state law claims and dismiss them without prejudice.

1

## II.     Factual Background

The underlying facts of this case are largely undisputed.

### A. Events of December 6, 2013

On December 6, 2013, Castro was patrolling in the vicinity of 1100 Arch Street in downtown Philadelphia. ECF 19-1, Def.'s Statement of Facts ("DSOF") ¶¶ 1, 4-6. That same day, Plaintiff was waiting in a "No Stopping Zone" near 1100 Arch Street for his cousin to come out from Reading Terminal Market. DSOF ¶¶ 2-3. Castro and Plaintiff had a brief interaction in which Castro advised Plaintiff that Plaintiff could stay there so long as he left his vehicle attended and left when the cousin returned. Id. ¶¶ 7-9.

After that interaction, Castro issued a parking ticket for another vehicle parked down the street owned by a man named Sidney Johnson. DSOF ¶¶ 11-13. While Castro was standing near Johnson's car, both Johnson and Plaintiff confronted Castro to protest the ticket. DSOF ¶ 14. Castro at some point placed a "priority" call to PPA's communications center indicating that she felt threatened and needed immediate assistance. DSOF ¶¶ 17-19.

Police were dispatched to Castro's location. By the time they arrived, Plaintiff had left. DSOF ¶¶ 20-21. Castro reported to police that Plaintiff had struck her in the forehead. DSOF ¶ 22. Plaintiff maintains Castro is lying, and this Memorandum credits Plaintiff's assertion for purposes of this Motion.

Police then stopped Plaintiff's car on North Broad Street. After Castro arrived and identified Plaintiff, Plaintiff was arrested, handcuffed and taken into police custody. DSOF ¶¶ 23-24. Plaintiff was arraigned and released on bail ten hours later. He was ultimately acquitted after a bench trial in Municipal Court on February 24, 2014. DSOF ¶¶ 25-27.

### B. Policies, Practices, and Customs of the PPA

The PPA's Employee Manual states that an employee may be immediately terminated for "[f]alsifying any Authority record, report, or information of any nature." DSOF ¶ 29. Plaintiff admits that there is no evidence that Castro or any other PPA employee have ever previously made a false report to the police to cause the false arrest of a member of the public, or that even any such false report was ever alleged. DSOF ¶ 30. Defendants and Plaintiff further agree that the Executive Director of the PPA testified that agency policy is for officers who have been assaulted or fear attack to call in a priority alert to police. ECF 24, Pl.'s Statement of Facts ¶ 63.

Plaintiff highlights an incident in 2003 in which Castro was internally disciplined for, among other things, filing false reports to PPA Management about a PPA supervisor. DSOF ¶¶ 34-36. Castro has had no further disciplinary issues since. DSOF ¶ 46. Plaintiff also highlights examples of what Plaintiff characterizes as Castro's propensity in her private life to say untruths to law enforcement officers and a 2013 performance review in which Castro was advised to be less defensive and aggressive in conflict situations. ECF 25 at 16-18.

### III. Analysis

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. Under Rule 56, the Court must view the evidence presented in the light most favorable to the non-moving party. Id. at 255.

**A. Plaintiff's § 1983 Claims Against Castro Fail Because Plaintiff Does Not Demonstrate that Castro Acted Under Color of Law**

**1. Can Parking Officers Act Under Color of Law in Any Circumstance?**

42 U.S.C. § 1983 (2015) provides a cause of action against "[e]very person who, <u>under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia</u>, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . ." (emphasis added). "[T]he essence of section 1983's color of law requirement is that the alleged offender, in committing the act complained of, abused a power or position granted by the state." <u>Bonenberger v. Plymouth Twp.</u>, 132 F.3d 20, 24 (3d Cir. 1997).

The Court held a hearing on this case on February 9, 2016. At that hearing, counsel for Defendants conceded that parking authority officers can act under color of state law in at least some circumstances, such as when they issue parking tickets. The inquiry then becomes whether Castro was acting under color of law in this case.

### 2. Castro Was Not Acting Under Color of Law When She Told Police Plaintiff Assaulted Her

"[N]ot all torts committed by state employees constitute state action, even if committed while on duty. For instance, a state employee who pursues purely private motives and whose interaction with the victim is unconnected with his execution of official duties does not act under color of law." <u>Id.</u> "[E]ven acts committed by a police officer . . . while on duty and in uniform are not under color of state law unless they are in some way related to the performance of police duties." <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1151 (3d Cir. 1995) (citations omitted). "[T]he focus of our inquiry is not on whether the state exercises control over a putative state actor as a general matter, but whether the state has exercised control over the particular conduct

4

that gave rise to the plaintiff's alleged constitutional deprivation." Kach v. Hose, 589 F.3d 626, 649 (3d Cir. 2009).

In this case, in Plaintiff's own words, "[t]he false statements and allegations Castro made to the police once they arrived […] are the basis of [Plaintiff's] claims." ECF 25 at 7. Plaintiff argues that Castro's alleged actions are state action because Castro was on duty at the time she made her statement to police, because PPA employees have the ability to call in a "priority alert" to police versus using normal 911 channels, because an assault against a PPA employee can carry elevated criminal penalties, and because the PPA had a policy of telling its employees to call the police if touched while on the job. ECF 25 at 4-6.

These arguments fail.

Neither the fact that Castro was on duty at the time she made her statement nor the fact that she used the PPA priority alert system to summon the police are sufficient to render Castro's behavior state action. As Defendants note, the Court must consider "the particular conduct that gave rise to the plaintiff's alleged constitutional deprivation." Kach, 589 F.3d at 649. The analysis requires examining the interaction between Castro and Plaintiff on a moment-by-moment basis. See Washington-Pope v. City of Phila., 979 F. Supp. 2d 544, 568 (E.D. Pa. 2013). The relevant moment in which Castro allegedly acted under color of law occurred when Castro made her statements. Those statements would have occurred regardless of whether Castro was on duty, and regardless of whether she used her PPA device to summon the police. Castro's status as a parking enforcement officer and method of bringing police to the scene are simply not a material part of the conduct that gave rise to Plaintiff's alleged injury.

As to the PPA's purported policy of telling assaulted employees to call the police, Plaintiff's arguments conflate the standard for Monell liability (discussed below) and the

5

doctrine of state action assuming that Castro was acting pursuant to such a policy.  Furthermore, Castro's <u>falsely</u> reporting an assault by Plaintiff would have been in furtherance of her own personal dispute with Plaintiff and not action pursuant to a PPA policy of telling employees to call the police if actually touched.  <u>See</u> <u>Barna v. City of Perth Amboy</u>, 42 F.3d 809, 817 (3d Cir. 1994) (<u>citing</u> <u>Delcambre v. Delcambre</u>, 635 F.2d 407, 408 (5th Cir.1981)) ("[A]lleged assault by on-duty police chief at police station did not occur under color of state law because altercation with the plaintiff, defendant's sister-in-law, arose out of a personal dispute and defendant neither arrested nor threatened to arrest the plaintiff.").  Plaintiff's argument at ECF 28 pp. 5-6 that Castro acted pursuant to PPA policy without any personal desire to have Plaintiff arrested simply cannot be conceptually reconciled with his assertion that Castro simultaneously lied to the police about what occurred.

Finally, Plaintiff cites no cases (and the Court is aware of none) for the proposition that elevated criminal penalties for assaulting a PPA employee can somehow turn the false reporting of said assaults into state action.

Therefore, there cannot be any § 1983 action against Castro, and Plaintiff's federal claims as to her shall be dismissed.

### B. Plaintiff Cannot State a <u>Monell</u> Claim Against the PPA

In <u>Monell</u> claims, "when a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." <u>McTernan v. City of York, Pa.</u>, 564 F.3d 636, 657 (3d Cir. 2009) (citations omitted).  "[A] failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the

supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998).

Even assuming Plaintiff has suffered a constitutional injury in this case – a plainly false assumption as to malicious prosecution[1] and a dubious one at best as to false arrest/imprisonment[2] – Plaintiff cannot state a Monell claim because he cannot satisfy the standard for liability.  Cf. Mulholland v. Gov't Cty. of Berks, Pa., 706 F.3d 227, 239 (3d Cir. 2013) ("There is no evidence that BCCYS employs a policy or has a custom of conducting desultory investigations, and the District Court correctly declined to subject Berks County to municipal liability for that claim.").

As noted above, Plaintiff has admitted that PPA's formal policies expressly forbade filing false reports to the police.  Plaintiff has also admitted that there is no evidence that Castro or any other PPA employee has ever even been alleged to have filed such a report.  Plaintiff further conceded at the February 9 hearing that the mere existence of a policy whereby officers are instructed to call the police if touched does not in and of itself suffice to state a constitutional violation.

Nor does evidence of Castro's alleged past behavior, including an incident from over ten years prior in which Castro was partially disciplined for making false statements about a superior, salvage a Monell claim.  Plaintiff's allegations fail to prove that the PPA acted with

---

[1] Plaintiff misapprehends the standard for § 1983 malicious prosecution as his brief assumes it is coextensive with the common law tort equivalent.  ECF 25 at 7.  In reality, a § 1983 malicious prosecution claim requires all of the elements of common law malicious prosecution plus proof that "the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007).  That standard is not met here.  Roberts v. Caesar's Entm't, Inc., 72 F. Supp. 3d 575, 581-82 (E.D. Pa. 2014) (finding no seizure for purposes of § 1983 malicious prosecution when a suspect was released after arraignment, even with a condition that the suspect not travel outside Pennsylvania).

[2] Plaintiff has cited no case, and this Court is aware of none, in which a private citizen acting without color of state law as Castro was, as opposed to the arresting officer herself, can be liable for constitutional false arrest by virtue of having reported false information to law enforcement authorities.  Nevertheless, Defendants have not cited any case foreclosing such relief and the Court assumes it is possible for purposes of this Motion.

deliberate indifference to Plaintiff's constitutional rights in allowing Castro to remain employed even assuming that everything Plaintiff alleges about Castro is true.[3] See Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown, 520 U.S. 397, 414 (1997) ("The fact that Burns had pleaded guilty to traffic offenses and other misdemeanors may well have made him an extremely poor candidate for reserve deputy . . . But unless [Sheriff Moore] would necessarily have reached that decision because Burns' use of excessive force would have been a plainly obvious consequence of the hiring decision, Sheriff Moore's inadequate scrutiny of Burns' record cannot constitute 'deliberate indifference' to respondent's federally protected right to be free from a use of excessive force.").

Accordingly, Plaintiff's Monell claim against the PPA fails.

### C. The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's State Law Claims

It is unclear precisely what state law torts Plaintiff is alleging against Castro and the PPA, though as noted the Amended Complaint appears to cursorily allege malicious prosecution, false imprisonment/arrest and/or intentional infliction of emotional distress. In light of the dismissal of the federal claims as noted above and Plaintiff's failure to sufficiently detail these allegations, the Court declines to exercise supplemental jurisdiction over them.

### IV.    Conclusion

Plaintiff's § 1983 claims fail as a matter of law because Plaintiff does not allege state action and because Plaintiff cannot demonstrate sufficient municipal culpability under Monell.

---

[3] Plaintiff confuses the standards for Monell liability based on the awareness of a pattern of similar incidents with the standards for impeaching a witness for truthfulness under Federal Rule of Evidence 608 based on that witness's prior conduct. ECF 25 at 14-15. Plaintiff's citation to United States v. Butch, 48 F. Supp. 2d 453 (D.N.J.) has no relevance to this case, and Plaintiff is simply wrong in arguing as a general matter that "evidence of prior incidents intended to show character is admissible." See Fed. R. Evid. 404(a).

Accordingly, they shall be dismissed with prejudice. Plaintiff's state law claims shall be dismissed without prejudice.

An appropriate Order follows.

O:\CIVIL 14\14-6925 wiecek v. cty phila\14cv6925.2016.02.09 Opinion re Defense MSJ.docx